*798 Bergan, J. (dissenting).
Plaintiff’s 58-year-old husband worked each day from 7:30 in the morning to about 7 o ’clock at night in a shoe repair and hat cleaning shop on Burnside Avenue in the Bronx. He was.knocked down and killed by a car driven by defendant’s testator while crossing Burnside Avenue to get a bus to go home on the evening of January 18,1960.
The circumstance that decedent was not crossing the street on the crosswalk was considered by the Trial Judge as so conclusive on the absence of any negligence by the operator of the car that he dismissed the complaint at the conclusion of plaintiff’s case. The driver of the car had died from unrelated causes before the trial and his testimony had not been taken.
Since there was no available witness to the actual occurrence of the accident, the case of the plaintiff must necessarily have rested on circumstantial proof and by a familiar rule she is entitled to the most favorable factual evaluation of such circumstances on a motion for nonsuit (Kraus v. Birnbaum, 200 N. Y. 130, 133), and since this is a death action the plaintiff “ is not held to as high a degree of proof ’ ’ as where the injured person u can himself describe the occurrence” (Noseworthy v. City of New York, 298 N. Y. 76, 80).
Thus viewed, the evidence makes out a case for the jury; it ought not have been dismissed on the plaintiff’s proof. The circumstances point rather clearly to negligence of the driver and, of course, there is no showing of the pedestrian’s negligence on which defendant had the burden and which could not depend as a matter of law alone on the mere fact he was crossing the street not at an intersection.
The reason decedent was crossing Burnside Avenue before he got to the corner is clear enough. Burnside Avenue runs east and west. The shop where decedent worked was on the north side. Deceased travelled home evenings by a bus which stopped a short distance east of the shop on the south side of Burnside Avenue. The bus station was on the southeast corner of Burnside Avenue and Jerome Avenue. But Jerome Avenue crosses Burnside at an angle. The southwest corner is 35 to 40 feet farther west than the northwest corner.
A person on the north sidewalk who would get the eastbound bus at Jerome Avenue and who follows the crosswalk would have to walk east beyond the bus stop on the other side following two sides of a triangle and walk southwest along the crosswalk *799 at Jerome Avenue to the bus station on the south side of Burnside Avenue.
It would be normal to expect that many people coming from the west on the north side of Burnside Avenue would walk across the street to the bus without walking to the more distant corner to follow the longer angle.
From admissions made by the driver to a policeman after the accident, it is established that the driver coming south in Jerome Avenue had made a turn west into Burnside Avenue. The driver indicated to the policeman the point at which he hit the pedestrian. The policeman, whose special duty it was as a member of the Accident Investigation Squad to investigate serious accidents, made careful observations and measurements. Burnside Avenue is a two-way street 50 feet wide with a white line in the center. It is a business district, a “ fairly well-lit area ”.
The police report showed no parked cars to block vision on the north side from which the pedestrian came. The point at which the driver said he struck the pedestrian was measured at 94 feet west of the northwest corner of Jerome Avenue and 20 feet south of the north curb of Burnside.
This was a point 5 feet short of the pedestrian’s having fully crossed the westbound lane of the street which was 25 feet wide. This alone could have presented a question for the jury of the operator’s negligence; it is not easy to understand how a pedestrian could traverse four fifths of the way across a traffic lane without being seen if the driver is careful and without some effective steps being taken not to be run down.
The further observations of the policeman suggest either that the driver was going too fast and was not using reasonable care, although he described his speed at 10 to 15 miles per hour, or that the pedestrian was in fact over the center line when he was struck. The proof is that the car was not moved after the accident until the police investigators arrived, made their observations and took the pictures.
These observations and photographs show that when the car came to a stop it was almost entirely on its left side of the center line, its front being 130 feet west of the Jeróme Avenue intersection. The body of the decedent was lying in the eastbound lane, 36 feet from the north curb of Burnside Avenue and 8 feet west of the car.
Thus, it is demonstrated the body had been carried by the car from a point 94 feet west of the Jerome Avenue northwest *800 corner, where the driver said he struck it, to 138 feet west of it, a distance of 44 feet, and from a point 20 feet south of the north curb to a point 36 feet south of it, a distance of 16 feet south, or considerably more than half the width of a traffic lane.
The total movement of the body after being struck, therefore, was 44 feet to the west and 16 feet to the south. This indicates speed. At the very least it indicates a lack of control of the car. The other alternative, that the pedestrian was farther south in the street and nearer to the place his body was found, alike would indicate a total failure of the driver to make reasonable observations.
The driver told the police investigator he saw “ a dark form ” coming “ from the right ” and swerved left. This may suggest why the car was in the left lane when it stopped but it does not explain the relatively long distance the body was carried before the car stopped in the left lane. He also told the police he “ first saw ” him a “ few feet in front ” of him.
The dismissal of this plaintiff’s case without sending it to the jury on the circumstantial proof of negligence is a departure from the settled rule of law in New York. If a witness had been standing on the north sidewalk of Burnside Avenue and had later described visually, foot-by-foot, that which the circumstantial proof indicates to have been the movements of the car and the pedestrian, the Judges who have sat in this case would probably have agreed without much trouble that a case was made out for the jury. And had the operator of the car lived and his deposition been taken examining fully into the distances and observations before the accident, a similar result would be expected.
The mere fortuity of the absence of a witness whose descriptions on the whole are no more reliable than a strong case of circumstantial evidence has led to the result that, although this automobile knocked down and killed a pedestrian on a lighted public street, no opportunity to go to a jury was afforded.
The circumstantial evidence aspect of the case is very close as a matter of law to Scantlebury v. Lehman (305 N. Y. 713) where there were no witnesses to an accident in which a bus ran down and killed a pedestrian and no evidence was offered by defendant. The case went to the jury on the circumstantial proof and a plaintiff’s verdict was affirmed by this court. Similar also is Klein v. Long Is. R. R. Co. (303 N. Y. 807). See, also, Lee v. City Brewing Corp. (279 N. Y. 380, 384), a case in *801 which it was held the testimony of the only eyewitness of an accident, an employee of defendant, was not binding on the plaintiff in all its unfavorable aspects.
It was raining at the time of the accident in the case before us and the driver told the police investigator he “ couldn’t see very far * * * just a little bit in front of me ”. This is an admission of negligence, not a statement of its absence. A man who undertakes to drive an automobile in a lighted business street in a large city without being able to see pedestrians in front of him certainly can be found to be negligent by a jury. If conditions of visibility are so bad that a driver can’t see, he ought to stop; or, if he keeps going, take the usual risk of paying for the damage he does. Driving without visibility is negligence as a matter of law.
But the photographs taken immediately after the accident suggest a visibility in which a careful driver would have been able to see a pedestrian without knocking him down. There is not the slightest evidence that the pedestrian was running, or coming from behind a parked car, or was in any other way negligent in the physical manner in which he crossed the street.
The Judge was of opinion that because the pedestrian was struck at a place other than a crosswalk the driver could not be negligent, apparently because the Judge felt the automobile at such a point had the “ right of way ”.
The decisive legal consideration which led the Trial Judge to dismiss the complaint is stated in this part of his oral decision:
“ The motorist at that point has a right of way. He has a right to assume that the pedestrian crossing at a point midway between two corners will recognize that the motorist has a right to go through. It’s not an absolute rule, it’s a flexible rule, each must respect the other’s rights at all times and take every reasonable measure to avoid any impact or collision between the two, but it is a rule, and, in this case, the rule favored the motorist over the pedestrian. So we find this motorist going along at a point forty feet from the corner presumably and on this rainy night when there is bad visibility he fails to see this man coming out of the curbline until he is very, very close to the automobile.
“ Does that of itself amount to negligence? The fact that he didn’t see him at that point considering all the surrounding conditions, considering the fact that he had the statutory right of way and was entitled to have the pedestrian respect his right *802 to go along, considering further that the rate of speed at which he was traveling, according to what is in the record here as evidence, was ten to fifteen miles an hour. Thus far nothing has been pointed to which could place upon the motorist the burden of legal responsibility at that particular point, forty feet west from the corner.”
The Judge was mistaken in deciding as a fact that the pedestrian was “coming out of the curbline ”. There is no proof whatever of that. The point of impact is fixed at 20 feet from the curb and no observation by the driver places the pedestrian at any specific nearer point to the curb. His admissions to the police took two forms. He “first saw” him a “few feet in front ” of him; and he also saw a dark figure coming “ from the right”. He did not otherwise locate where and, in looking at the facts and dismissing the complaint, the Judge is bound to take the facts most favorable to plaintiff. This does not on any possible view place the pedestrian as “coming out of the curbline ”.
The court was patently mistaken in holding as a matter of law and on the theory of “ right of way ”, which is a jury question, that because the decedent was not on a crosswalk his widow’s case must be dismissed. It is thoroughly settled in New York that negligence is not excused and contributory negligence not imputed as a matter of law because a pedestrian crosses a street not on a crosswalk. (Morin v. Star Plumbing Co., 263 N. Y. 552; Welsh v. Neumann, 263 N. Y. 648.) The general right of the pedestrian to cross a street anywhere without relieving the drivers of vehicles of the duty of care not to injure them is laid down in Moebus v. Herrmann (108 N. Y. 349). (See, also, Baker v. Close, 204 N. Y. 92, and Callins v. Ritter, 7 N Y 2d 793.)
The order should be reversed and a new trial granted.
Order affirmed.